[Doc. No. 38]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FRANCIS BONANNI,<br><br>                     Plaintiff,<br><br>     v.<br><br>OTIS R. THOMPSON, et al.,<br><br>                     Defendants. | Civil No. 14-4745 ((JS) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by The Morey Organization ("TMO"). [Doc. No. 38]. The Court received plaintiff's opposition [Doc. No. 41], TMO's reply [Doc. No. 43], and the partial opposition of defendant Otis R. Thompson ("Thompson") [Doc. No. 42].[1] The Court recently held oral argument. For the reasons to be discussed, TMO's motion is GRANTED in part and DENIED in part.

Background

This lawsuit arises out of an incident that occurred on July 12, 2012, while plaintiff was a patron at TMO's amusement pier in Wildwood, New Jersey. Plaintiff alleges he was assaulted by TMO's game operator, Thompson.

---

[1] Thompson only opposes TMO's motion as to respondeat superior liability.

1

The relevant background facts, in the light most favorable to the plaintiff, are not especially complicated. On the day in question Thompson operated the "Blockbuster" or "bean bag" game. Plaintiff, 16 years old at the time, demanded a free shot. Thompson refused. Plaintiff then threatened to come into the booth. Due to plaintiff's age, height and weight, Thompson felt threatened and did not want to be trapped in his booth. He also wanted to detain plaintiff so that plaintiff would not leave before security escorted him off the pier. Thompson then cleared off his counter, took his apron off, picked up a broom to deter plaintiff, and left his booth. During the course of the encounter, Thompson pushed against plaintiff and yelled for security. Plaintiff alleges he fell and was injured by Thompson's push.

TMO moves for summary judgment on plaintiff's claims against it. These include: (1) the claim that TMO is liable under respondent superior for Thompson's actions; (2) the claim that TMO negligently trained and supervised Thompson; and (3) plaintiff's punitive damage claim against TMO.

Discussion

1. Respondeat Superior Claim

TMO argues it is not liable under respondent superior for Thompson's actions. TMO also argues Thompson acted outside the scope of his employment when he pushed against plaintiff and

that Thompson's conduct was not foreseeable. In addition, TMO argues Thompson was not authorized to use force and he was trained not to do so. TMO argues Thompson should have stayed in his booth and called security.

As even TMO recognizes, even if Thompson violated TMO's rules and training this does not in and of itself result in a finding that Thompson acted outside the scope of his employment. Rather, the "scope of employment" test requires a fact-specific inquiry. In Davis v. Devereux, 209 N.J. 269 (2012), the Court relied upon the Restatement (Second) of Agency §228(1), in holding that in order for an employee's actions to be within the scope of his or her employment, a plaintiff must show the employee's conduct:

    (a)  is of the kind the employee is employed to perform;

    (b)  the conduct occurred substantially within the authorized time and space limits;

    (c)  the conduct was actuated, at least in part, by a purpose to serve the master; and

    (d)  if force is intentionally used by the employee against another, the use of force is not unexpectable by the employer.

Id. at 489-90. The parties agree factor (b) is satisfied so only factors (a), (b) and (d) will be examined. As to all of these factors the Court finds that fact questions exist which must be decided by a jury.

As to factor (a), is the conduct of the kind Thompson was employed to perform, TMO argues Thompson had no responsibility for security. Nevertheless, a jury may find, <u>inter</u> <u>alia</u>, that Thompson was concerned about protecting the safety of other patrons at the amusement pier and that this is part of every employee's duty. The jury may also find that it was part of Thompson's job to make the area surrounding his booth safe. <u>See</u> TMO's Mission Statement ("Guest safety is a core integrity issue for us."). Doc. No. 38-2 (p. 11). In addition, a jury could find that by attempting to delay plaintiff until security arrived, Thompson was attempting to foster the pier's safe and family atmosphere by keeping plaintiff from bothering patrons at the pier. As to factor (c), TMO argues Thompson's conduct did not serve its purpose because TMO required its employees to be friendly and courteous. However, again, a fact question exists because a jury could find that Thompson was acting to protect TMO's cash and other patrons from plaintiff's alleged obnoxious conduct. In this regard it is significant that plaintiff does not have to show that Thompson's sole purpose was to serve TMO. Plaintiff only as to show that Thompson's actions were motivated "in part" to serve TMO. <u>Devereux</u>, 209 N.J. at 490.

As to factor (d), whether Thompson's actions were foreseeable or "not-expectable", this is also a fact question. It is true the record shows that Thompson was an exemplary

4

employee and there were no prior assaults by game operators at the amusement pier. However, the Court does not accept the notion that simply because an incident of this type did not happen before that it was not foreseeable. A jury should decide whether someone in Thompson's circumstances would act as he did when confronted with plaintiff's imminent threat. After all, plaintiff was 16 years old, 220 pounds and 5'9" when this incident occurred. Plaintiff was approximately 67. Faced with plaintiff's threat, the Court cannot find that Thompson's actions were unforeseeable as a matter of law. This is especially true if the jury finds Thompson acted in self-defense. A jury should also decide whether it was foreseeable that an exemplary employee might, in TMO's view, "lose his cool." In addition, a jury should take into account that there was no working phone in Thompson's booth, he did not have a walkie-talkie, and he did not want to leave the area of the booth and leave his cash unattended. In short, Thompson's actions were not so outrageous or exceptional that the Court should take the foreseeability issue away from the jury.

The main case TMO relies on, Devereux, supra, is plainly distinguishable. In that case a counselor poured boiling water on a patient when the counselor went to get the patient out of bed. The Court held that no rational factfinder cold find the counselor's actions were within the scope of her employment and,

5

therefore, the summary judgment entered in favor of the employer was proper. Thompson's conduct in this case is not nearly as extreme and outrageous as was the counselor's conduct in Devereux.

Instead, this case is more analogous to the cases plaintiff and Thompson cite. In Gibson v. Kennedy, 23 N.J. 150 (1957), the plaintiff and defendant were both employed by the Pennsylvania Railroad. Defendant understood he was to empty a train but plaintiff disagreed. The parties then had an altercation although there was a dispute as to how it started. The Court held that even though the defendant struck the plaintiff, a fact question existed as to whether the defendant was acting within the scope of his employment. Similarly, in Schisano v. Brickseal Refractory Co., 62 N.J. Super. 269 (App. Div. 1960), the defendant's employee was responsible for assuring that unauthorized persons did not park in his employer's lot. While the defendant's employee was attempting to convince plaintiff's decedent to move his car, the employee punched the decedent. The Court held it was a jury question if the employee was acting within the course and scope of his employment.

    2.   Negligent Training and Supervision Claim

In connection with its motion seeking judgment on plaintiff's negligent training and supervision claim, TMO makes two arguments. First, it argues plaintiff did not support his

6

claim with expert testimony. Second, it argues there is no fact question that it provided adequate training and supervision.

As to TMO's first argument, the Court finds that plaintiff does not need an expert. The Court disagrees with TMO's argument that "[b]ecause the manner in which amusement park employees should be trained is sufficiently complex that it is beyond the ken of the average juror[.]" Brief at 21. The Court finds that a jury does not need expert assistance to decide if TMO appropriately trained Thompson as to how to act in response to an unruly customer. An expert is necessary to testify about a particular subject area where the average person could not be expected to have sufficient knowledge or experience. Grobelny v. Baxter Heathcare Corp., C.A. No. 05-cv-4645 (PCS), 2008 WL 2186417 at *1 (D.N.J. May 23, 2008). An expert is not necessary if the subject matter at issue is within the range of ordinary experience and comprehension of non-professional persons, and is within the ken of a layperson. Scott v. Calpin, 527 Fed. Appx. 123, 126 n. 4 (3rd Cir. 2013). "When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper." Lasorsa v. Showboat: The Mardi Gras Casino, C.A. No. 07-4321 (JBS/JS), 2009 WL 2929234, at *5 (D.N.J. Sept. 9, 2009)(citation and quotation omitted). It is the Court's judgment that average jurors are

7

qualified to determine if TMO's training of a game operator at its amusement pier was appropriate. This situation is plainly distinguishable from the police supervision cases TMO relies upon. This case is also distinguishable from <u>Brijall v. Harrah's Atlantic City</u>, 905 F. Supp. 2d 617, 621 (D.N.J. 2012), that involved an evaluation of the actions of a professional security guard.

As to TMO's second argument, the Court finds that a fact question exists as to the adequacy of TMO's training and supervision, and whether TMO's conduct caused plaintiff's injuries. The parties do not disagree on the applicable legal standard. To sustain a claim for negligent supervision a plaintiff must present evidence from which a reasonable jury could conclude that an employer should have reasonably foreseen that its employee "would intentionally or negligently injure a customer during the performance of his duties, and that such injury could have been prevented through proper supervision." <u>Worrall v. City of Atlantic City</u>, C.A. NO. 11-3750 (RBK/JS), 2014 WL 980575, at *3 (D.N.J. March 13, 2014). To sustain a claim of negligent training, plaintiff must show: (1) TMO owed a duty of care to the plaintiff, (2) TMO breached its duty of care, (3) TMO's breach was the proximate cause of plaintiff's injury, and (4) TMO's breach caused actual damages to plaintiff. <u>Stroby v. Egg Harbor Twp.</u>, 754 F. Supp. 2d 716, 721 (D.N.J.

8

2010). While it may be true that TMO provided instruction and training to Thompson, a jury could find it was not sufficient to address the situation plaintiff faced. For example, while TMO's paperwork refers to children, there is nothing about how to deal with troublesome teenagers or adolescents. Also, what to do if a worker is threatened by a patron. Moreover, as plaintiff argues, Thompson testified TMO provided no training about how to treat or interact with (1) argumentative guests, (2) guests who did not follow his directions, (3) patrons who acted inappropriately, or (4) minors. See Plaintiff's Opposition, Exhibit A, Thompson Deposition Transcript at 53:13-25; 54:1-14. This testimony raises a fact question as to the adequacy of TMO's training and supervision. TMO argues it is "undisputed that Thompson's conduct was directly contrary to the training and instructions that he had been given[.]" Brief at 4. The Court disagrees. A fact question exists as to whether the training and instructions Thompson received adequately addressed the situation Thompson faced.

    3.   <u>Punitive Damage Claim</u>

As to TMO's last argument, the Court finds that summary judgment should be entered in favor of TMO on plaintiff's punitive damage claim. New Jersey's Punitive Damages Act, ("PDA"), in pertinent part, provides:

> Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

See N.J.S.A. 2A: 15-5.12(a). The PDA defines "actual malice" as "an intentional wrongdoing in the sense of an evil-minded act." N.J.S.A. 2A:15-5.10. "Wanton and willful disregard" is defined as "a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." Id.

In order to impose punitive damages a plaintiff must demonstrate that a defendant's conduct was wantonly reckless or malicious. Pavlova v. Mint Management Corp., 375 N.J. Super. 397, 404 (App. Div. 2005). The defendant must have engaged in a "deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." Berg v. Reaction Motors Div., 37 N.J. 396, 414 (1962). The defendant must have known or had reason to know of circumstances which would bring home to the ordinary reasonable person the highly dangerous character of his or her conduct. Pavlova, 375 N.J. Super. at 404; McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 306 (1970).

The PDA provides a non-exclusive list of factors that are considered in determining whether to award punitive damages. These are: (1) the likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) the defendant's awareness or reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) the conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) the duration of the conduct or any concealment of it by the defendant. N.J.S.A. 2A:15-5.12.

Even viewing the facts in the light most favorable to plaintiff, the record simply does not demonstrate that TMO's actions were intentional, malicious or wanton. Plaintiff emphasizes that a week or so before this incident plaintiff mentioned in general fashion that teenagers were more belligerent than they were in the past. However, this general statement did not put TMO on notice that plaintiff's incident would occur or that plaintiff would injure a patron. This statement did not give rise to the "very real likelihood of the immediate and substantial serious injury that actually occurred." Pavlova, 375 N.J. Super. at 405. After all, plaintiff does not contest that there were no similar incidents at the pier the last ten years and Thompson was an exemplary employee.

11

Further, there is no evidence that anyone in TMO's upper management had knowledge of any problems at the pier.[2]

Conclusion

Accordingly, for all the foregoing reasons, it is hereby ORDERED this 24th day of November, 2015, that The Morey Organization's Motion for Summary Judgment is GRANTED in part and DENIED in part; and it is further

ORDERED that TMO's motion as to plaintiff's punitive damage claim is GRANTED; and it is further

ORDERED that the remainder of TMO's motion is DENIED; and it is further

ORDERED that summary judgment is awarded in favor of Thompson on plaintiff's punitive damage claim.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

---

[2] TMO's summary judgment motion is inexorably connected to Thompson's liability. Even though Thompson did not move for summary judgment on plaintiff's punitive damage claim, judgment on the claim will be awarded in favor of Thompson. There is no evidence in the record that Thompson intentionally or recklessly injured plaintiff. The record does not show circumstances of aggravation and outrage beyond the simple commission of an alleged tort to support a finding of punitive damages. Pavlova, 375 N.J. Super. at 404-05. The Court has the authority to sua sponte grant summary judgment. Powell v. Beard, 288 Fed. App'x. 7, at 8-9 (3d Cir. 2008); Forrest v. Corzine, C.A. No. 09-1555 (RBK/JS), 2015 WL 6175360, at *9 (D.N.J. Oct. 20, 2015).